BARRY J. PORTMAN
Federal Public Defender
NICHOLAS PETER HUMY
Assistant Federal Public Defender
160 West Santa Clara Street, Suite 575
San Jose, CA 95113
Telephone: (408) 291-7753

Counsel for Defendant GAITHER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL GAITHER, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR-07-00457 RMW <br><br> DEFENDANT'S SENTENCING MEMORANDUM |

INTRODUCTION

Michael Gaither submits this memorandum to assist the Court in fashioning a reasonable sentence in this matter. The defense is in receipt of the Presentence Report, any objections the defense has to the report are documented in paragraphs 2-11 of the Addendum to the Presentence Report. For the following reasons, the defense respectfully asks the Court to find that Michael Gaither's possession of the firearm was for lawful sporting purposes and that he did not unlawfully discharge or otherwise unlawfully use the firearm, and that consequently the base offense level in this matter is level 6. Mr. Gaither is entitled to two levels off for acceptance of responsibility, resulting in an adjusted level 4, giving a sentencing range of 4-10 months. Mr. Gaither asks that he be sentenced within that range, and that he be allowed to serve any period of

SENTENCING MEMORANDUM          1

confinement through home detention as a condition of probation.

## ARGUMENT

**1. The Base Offense Level Is Level 6, Pursuant to U.S.S.G § 2k2.1(b)(2).**

The United States Sentencing Guidelines provide that the base offense level for a prohibited person who possesses a firearm is level 14.  U.S.S.G. 2k2.1(a)(6).  If, however, the prohibited person possesses the firearm "solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use" the firearm the base offense level is 6.  U.S.S.G. § 2k2.1(b)(2).  In determining the purposes for which a defendant possesses the firearm, the courts consider "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of defendant's criminal history ... and the extent to which possession is restricted by local law." United States v. Borer, 412 F.3d 987, 993 (8th Cir. 2005); U.S.S.G. § 2K2.1 comment n.6.

Consideration of these factors lead to the conclusion that Mr. Gaither's possession of the firearm was solely for lawful sporting purposes pursuant to U.S.S.G. § 2k2.1(b)(2).  As further elaborated below, the following facts pertain to the possession of the firearm in this matter: there is only one firearm; it is an antiquated bolt action rifle with a fixed magazine; only 32 rounds of ammunition were found, of a type that fit the rifle and is in keeping with target practice; the rifle was found unloaded and stored in a bedroom closet; it was used for target practice, and there is no evidence that it was used or intended to be used otherwise; the rifle had been modified with a muzzle break, and with a mount for a scope, both of which are in keeping with use for target practice; a bi-pod was also found, which is also in keeping with use for target practice; but for one altercation in prison, Mr. Gaither's criminal history does not suggest violent tendencies, and certainly does not suggest any tendencies to use firearms against persons or property; there are no local laws restricting the possession of a bolt action rifle.

**2. Pertinent Facts and Argument**

Ms. Shawna Terry is Michael Gaither's girlfriend.  They have lived together for the last

SENTENCING MEMORANDUM                 2

several years, except for a brief period when Mr. Gaither lived with his parents as a condition of his pretrial release. They currently live together again. Ms. Terry is pregnant with Mr. Gaither's child. The terms of his pretrial release were modified to allow Mr. Gaither to attend to Ms. Terry and to attend her doctor's appointments.

On January 8, 2005, Ms. Shawna Terry purchased a Mosin Nagant M-44 bolt action rifle. The rifle is a Russian Army surplus item, made in 1944. It has a fixed magazine, which holds only five rounds of ammunition. The rifle also came with a retractable bayonet attached. Ms. Terry purchased the rifle at a Big 5 Sporting Goods store in Milpitas, and registered the firearm in her name. The purpose for the rifle was to target shoot.

Ms. Terry and Mr. Gaither showed the rifle to Ms. Terry's mother, Sheila Terry. Mr. Gaither told Sheila Terry that he wanted to restore the rifle.

Ms. Terry and Mr. Gaither took the rifle to a shooting range, and fired it together. Ms. Terry had shot smaller caliber rifles in the past, such as .22 caliber firearms. The Mosin Nagant was quite powerful and had a strong recoil. In order to help Ms. Terry with the recoil, Mr. Gaither purchased a bipod, which was never used. Mr. Gaither also installed a muzzle break, which is designed to diffuse the gases coming out of the muzzle, and to minimize the recoil. However, Mr. Gaither never thought the muzzle break installation looked correct, and so the rifle was never fired again.[1] Mr. Gaither also installed a scope mount in order to mount a scope. This modification was never completed. The rifle was stored in the bedroom closet. It was stored unloaded. The bayonet had been removed, since it only interfered with target shooting, and could not be attached when the muzzle break was attached.

The Mosin Nagant in this case was manufactured by the Soviets in 1944, towards the end of the second world war. In 1944 the technology was already quite outdated; it is based on the

---

[1] This proved to have been prudent. The discovery provided to the defense indicates that when the Santa Clara County forensics unit test-fired the rifle, the muzzle break became unattached after the second firing.

SENTENCING MEMORANDUM            3

1 Nagant M1891/30, which was designed in 1891 by commission to Nicholas II, Tsar of Russia.
2 The differences between the 1891 model and the 44 model are a shorter barrel, shorter stock, and
3 the attached bayonet. It has a bolt action. The magazine is not detachable, which means that it
4 must be loaded round-by-round after it is emptied. The magazine holds only five rounds. The
5 rifle is heavy, and slow to operate, and hard to conceal. The 1944 rifle is a vintage, nostalgia
6 piece, suitable for collecting (though not valuable by any means), and for target shooting. Mr.
7 Gaither and Ms. Terry possessed this weapon for target shooting.

8 Mr. Gaither's criminal history is fairly lengthy, but it does not reflect the history of a
9 violent person. Apart from the jailhouse misdemeanor battery case (PSR ¶ 41), Mr. Gaither's
10 offenses are virtually all theft offenses, or escapes from various low security juvenile and adult
11 facilities. Even those offenses involving firearms are truly theft offenses in nature. See PSR ¶¶
12 33, 39 & 40. There is nothing in this criminal history to indicate that Mr. Gaither possessed the
13 rifle in question for any reason other than to use it for target practice.

14 As stated above there are no local laws otherwise restricting the possession of this
15 particular rifle.

16 The United States Sentencing Guidelines for this offense are carefully calibrated to reflect
17 the true seriousness of possession of a firearm by a prohibited person. This particular section of
18 the Guidelines has gone through numerous amendments and each new version has included the
19 provision commonly called the "sporting exception," as provided in § 2K2.1(b)(2). Although
20 the offense level for many different offense characteristics in this section have been increased
21 over the years, the offense level under § 2K2.1(b)(2) has not been increased. Many of the
22 amendments to this section have been in response to statutory provisions, so it can be said that
23 this entire section is the result of the deliberations of Congress as well as the Commission.

24 For all the reasons stated above, the correct base offense level for Mr. Gaither's offense in
25 this matter is Level 6. Mr. Gaither is entitled to a two level adjustment for acceptance of
26 responsibility, pursuant to U.S.S.G. § 3E1.1(a). He pled guilty to this offense at the earliest

SENTENCING MEMORANDUM                4

opportunity. His adjusted Offense Level would be Level 4. With Criminal History Category V, the sentencing range would be 4-10 months in Zone B. When a sentencing range falls within Zone B, any term of custody can be satisfied by a term of home confinement as a condition of probation. U.S.S.G. §§ 5C1.1(c) & (e).

## CONCLUSION

Mr. Gaither respectfully asks the Court to sentence him to a period of four years probation, with the special condition that he serve 6 months in home confinement, which confinement would allow him to seek and maintain employment and/or to attend classes.

Dated: January 9, 2008

                                        Respectfully submitted,

                                        BARRY J. PORTMAN
                                        Federal Public Defender

                                        _____/s/_____
                                        NICHOLAS PETER HUMY
                                        Assistant Federal Public Defender